**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**HEATHER C.,**

**Plaintiff,**

**v.** **Case No.: 3:25-cv-00701**

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

**Defendant.**

# PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Heather C.'s application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Claimant's Brief in Support of Judgment on the Pleadings (ECF No. 8), the Commissioner's Brief in Support of Defendant's Decision (ECF No. 9), and Claimant's Reply Brief (ECF No. 10).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the District Court **GRANT** Claimant's request for remand (ECF No. 8); **DENY** the Commissioner's request to affirm the final

decision (ECF No. 9); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Proposed Findings and Recommendation; and **DISMISS** this action from the docket of the Court.

## I. Procedural History

Claimant protectively filed an application for SSI on August 12, 2022, alleging disability beginning September 1, 2020. (Tr. at 55). The Social Security Administration ("SSA") denied the application initially on July 27, 2023, and upon reconsideration on September 17, 2024. *(Id.)*. Claimant thereafter requested an administrative hearing. *(Id.)*.

Administrative Law Judge ("ALJ") Benjamin Chaykin conducted a hearing by telephone on March 13, 2025. (Tr. at 55, 74–96). Claimant appeared with counsel and testified, and an impartial vocational expert ("VE") also testified. (Tr. at 55, 74-96). On March 31, 2025, the ALJ issued an unfavorable decision finding that Claimant was not disabled under the Social Security Act. (Tr. at 55–68). The Appeals Council denied Claimant's request for review on October 1, 2025, rendering the ALJ's decision the Commissioner's final decision. (Tr. at 1–4).

Claimant timely commenced this action on November 25, 2025, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed the administrative transcript on January 20, 2026. (ECF No. 5). Thereafter, Claimant filed her Brief in Support of Judgment on the Pleadings, (ECF No. 8), and the Commissioner filed his Brief in Support of Defendant's Decision, (ECF No. 9), to which Claimant filed a Reply, (ECF No. 10). This matter is thus fully briefed and ready for resolution.

## II. Claimant's Background

Claimant was 43 years old on the date she filed her application and was therefore classified as a younger individual under the regulations. (Tr. at 66). She has at least a high school education and no past relevant work. *(Id.)*.

## III. Sequential Evaluation Process

An individual is considered disabled for purposes of SSI if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A). The SSA has established a five-step sequential evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4).

At the first step, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i). If not, the ALJ proceeds to the second step and determines whether the claimant has a severe medically determinable impairment or combination of impairments. *Id.* § 416.920(a)(4)(ii). At the third step, the ALJ determines whether the impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment meets or medically equals a listed impairment, she is found disabled without further inquiry. *Id.*

If the first three steps do not lead to a conclusive determination, the ALJ assesses the claimant's residual functional capacity ("RFC") before proceeding to step four. *Id.* § 416.920(e). The RFC represents the most a claimant can still do despite the physical and mental limitations caused by her medically determinable impairments. 20 C.F.R. § 416.945(a)(1); *see Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). In assessing RFC,

the ALJ must consider all medically determinable impairments, including those that are not severe, as well as the claimant's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the evidence. 20 C.F.R. § 416.945(a).

At step four, the ALJ determines whether the claimant can perform her past relevant work in light of the assessed RFC. 20 C.F.R. § 416.920(a)(4)(iv). If she cannot, the analysis proceeds to the fifth and final step. At step five, the burden shifts to the Commissioner to prove that the claimant can perform other work that exists in significant numbers in the national economy, considering her RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v), (g); *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015). The Commissioner typically presents this evidence through the testimony of a VE responding to a hypothetical question that incorporates the claimant's limitations. *Id.*

When a claimant has a medically determinable mental impairment, the SSA must also employ a special technique to evaluate its severity. 20 C.F.R. § 416.920a. After determining whether a medically determinable mental impairment exists, the ALJ rates the degree of functional limitation in four broad areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(b)–(c). If a mental impairment is severe but does not meet or medically equal a listed impairment, the ALJ must account for the impairment when assessing the claimant's mental RFC. *Id.* § 416.920a(d)(3).

## IV. **Summary of the ALJ's Decision**

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since August 12, 2022, the application date. (Tr. at 57). Proceeding to step two, the ALJ found that Claimant had the severe impairments of degenerative disc disease of

the lumbar and cervical spine, complex regional pain syndrome ("CRPS"), obesity, fibromyalgia, depressive disorder, anxiety disorder, and somatic symptom disorder. *(Id.)*.

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. at 58). With respect to fibromyalgia, the ALJ recognized that fibromyalgia is not a listed impairment but may medically equal a listing individually or in combination with another medically determinable impairment under SSR 12-2p. (Tr. at 59). He concluded that Claimant's fibromyalgia did not medically equal a listing. *(Id.)*. In applying the special technique to Claimant's mental impairments, the ALJ found that Claimant had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing herself. (Tr. at 59–60).

The ALJ determined that Claimant retained the RFC to perform light work with additional limitations. (Tr. at 60–61). Specifically, the ALJ prohibited climbing ladders, ropes, or scaffolds and crawling; permitted occasional climbing of ramps or stairs and crouching; and permitted frequent stooping, balancing, and kneeling. *(Id.)*. He limited Claimant to frequent exposure to extreme heat, extreme cold, humidity, wetness, vibration, more than moderate noise, dusts, odors, fumes, and other pulmonary irritants and occasional exposure to dangerous hazards. (Tr. at 61). The ALJ further limited Claimant to frequent reaching, handling, fingering, and feeling with the dominant right upper extremity; occasional operation of foot controls with the right lower extremity; and frequent interaction with supervisors, coworkers, and the public to carry out simple instructions. *(Id.)*.

At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 66). At step five, relying on VE testimony, he found that Claimant could perform the representative occupations of collator operator, with approximately 40,000 jobs nationally; router, with approximately 31,000 jobs nationally; and marker, with approximately 131,000 jobs nationally. (Tr. at 67). The ALJ therefore concluded that Claimant could make a successful adjustment to other work existing in significant numbers in the national economy and had not been disabled since August 12, 2022. (Tr. at 68).

## V. Claimant's Challenge to the Commissioner's Decision

Claimant raises a single assignment of error. She contends that the ALJ failed to account for the total limiting effects of her CRPS and fibromyalgia by failing to evaluate those impairments in accordance with SSR 03-2p and *Arakas v. Comm'r, Soc. Sec. Admin.,* 983 F.3d 83 (4th Cir. 2020).

With respect to CRPS, Claimant argues that SSR 03-2p requires consideration of features unique to the condition, including the transitory nature of objective findings, the possibility of conflicting medical evidence, and the importance of a longitudinal record. (ECF No. 8 at 10–11). She acknowledges in reply that an ALJ's failure expressly to cite SSR 03-2p may be harmless if the ALJ nonetheless applies the substance of the ruling, but she maintains that the ALJ did not do so in this case. (ECF No. 10 at 1–2). Claimant argues that the ALJ instead summarized alternating normal and abnormal findings without explaining which of her reported CRPS symptoms he accepted or rejected or how those findings affected his evaluation of her symptoms and resulting RFC. (ECF Nos. 8 at 11–12, 10 at 2–4). She relies principally on *Adam H. v. Bisignano*, 2026 WL 568774 (D. Md. Mar. 2, 2026), and similar cases applying SSR 03-2p. (ECF No. 8 at 10–12).

The Commissioner responds that SSR 03-2p does not prescribe a separate sequential evaluation process for CRPS and that the ALJ was not required expressly to cite the ruling. (ECF No. 9 at 6–7). The Commissioner emphasizes that the ALJ found CRPS to be a severe impairment, considered Claimant's physical impairments throughout the sequential analysis, discussed her CRPS history and alleged pain when assessing the RFC, and relied in part on normal findings and the prior administrative medical findings. *(Id.)*. Accordingly, the Commissioner maintains that the ALJ sufficiently considered Claimant's CRPS and reasonably limited her to a reduced range of light work. (ECF No. 9 at 7).

As to fibromyalgia, Claimant argues that the ALJ violated *Arakas* by relying on objective findings to discount her description of the intensity, persistence, and limiting effects of her symptoms. (ECF No. 8 at 12–13). She emphasizes that *Arakas* prohibits reliance on objective medical evidence, even as one of several factors, to discount subjective complaints attributable to fibromyalgia. (ECF No. 8 at 12). Claimant further argues that the ALJ evaluated her physical impairments collectively and did not distinguish which normal findings related to objectively measurable conditions such as degenerative disc disease from his evaluation of symptoms attributable to fibromyalgia. (ECF No. 10 at 5–7). She relies on *Pevaroff v. Comm'r of Soc. Sec.*, 2025 WL 40863 (W.D.N.C. Jan. 6, 2025); *Priscilla S. v. Dudek*, 2025 WL 1109438 (S.D.W. Va. Mar. 27, 2025), *report and recommendation adopted*, 2025 WL 1106081 (S.D.W. Va. Apr. 14, 2025); and *Amy A. v. Bisignano*, 2025 WL 2847226 (S.D.W. Va. Sept. 17, 2025). (ECF No. 10 at 6–7).

The Commissioner responds that the ALJ did not reject Claimant's fibromyalgia allegations solely on the basis of objective evidence. (ECF No. 9 at 8–10). He argues that

the ALJ considered the record as a whole, including Claimant's reports of improvement in April 2023 and May 2024 and her January 2025 denial of falls or problems with balance or coordination. (ECF No. 9 at 9–10). The Commissioner also contends that the ALJ permissibly considered objective findings relating to Claimant's other physical impairments and credited her pain allegations to a significant extent by restricting her to a reduced range of light work. *(Id.)*. In support of his position, the Commissioner relies in part on *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); *Stup v. UNUM Life Insurance Co.*, 390 F.3d 301 (4th Cir. 2004); *Gross v. Heckler*, 785 F.2d 1163 (4th Cir. 1986); *Rodney M. v. Kijakazi*, 2024 WL 1097192 (D. Md. Mar. 13, 2024); and *Padua v. Bisignano*, 145 F.4th 784 (7th Cir. 2025). (ECF No. 9 at 8–10).

In reply, Claimant maintains that the Commissioner's argument that the ALJ did not rely only on objective evidence does not resolve the issue under *Arakas*, which prohibits using such evidence even as one factor to discount fibromyalgia symptoms. (ECF No. 10 at 5). She also contends that the Commissioner's cited reports of improvement concern treatment of spinal conditions rather than fibromyalgia. (ECF No. 10 at 6). Claimant therefore maintains that the ALJ's combined evaluation of her various physical impairments prevents meaningful review of whether he applied the proper standard to her fibromyalgia symptoms. (ECF No. 10 at 6–7).

## VI. Relevant Evidence

The undersigned has reviewed all of the evidence before the Court. The following evidence is most relevant to the issue in dispute.

### *A. Medical Evidence Relevant to CRPS and Fibromyalgia*

On August 16, 2022, Claimant presented for a neurology follow-up regarding CRPS of the lower extremity. (Tr. at 408–09). She reported constant shooting pain from her

right knee, which she rated six to seven out of ten, associated with red discoloration and swelling. (Tr. at 408). Examination showed subtle erythema and edema of the right knee, an antalgic gait on the right, and right lower extremity strength of 4/5. (Tr. at 409). Claimant was assessed with CRPS I of the lower extremity. *(Id.)*.

During a subsequent neurology visit on November 16, 2022, Claimant reported that her pain had progressed into her right upper extremity and the right side of her neck. (Tr. at 397). She described burning, hypersensitivity, redness, and swelling, as well as shooting pain extending from the right knee into her toes and above the knee and from the right side of her neck through the right upper extremity into her hand. *(Id.)*. Claimant again rated the pain six to seven out of ten, stated that it was constant, and reported only minimal benefit from treatment. *(Id.)*.

A February 13, 2023 chiropractic examination documented a normal gait, 5/5 upper and lower extremity strength, and normal sensation. (Tr. at 691). The examination also documented hypersensitivity in the right leg around the L4 dermatome. *(Id.)*. Claimant reported that her condition had worsened, and the provider described an exacerbation of symptoms. *(Id.)*. The provider identified pain intensity greater than six out of ten and prolonged symptoms as complicating factors. *(Id.)*.

Claimant underwent a right lumbar sympathetic block on April 12, 2023. (Tr. at 685–86). Claimant reportedly experienced "good" improvement in pain immediately following the injection. (Tr. at 686). At an April 19, 2023 chiropractic visit, Claimant reported some relief and rated her cervical and lumbar pain as three out of ten. (Tr. at 717). The chiropractor assessed that Claimant's condition had improved and noted improved range of motion and muscle tone. (Tr. at 718). The same treatment record

continued to identify severe pain intensity greater than six out of ten and prolonged symptoms as complicating factors. *(Id.)*.

Claimant underwent a whole-body bone scan on March 21, 2024, which showed foci of increased activity in the shoulders, knees, ankles, and feet that were considered most likely degenerative in nature. (Tr. at 1024). At a May 20, 2024 chiropractic visit, Claimant reported that she had experienced a better weekend, was not as tight or sore, and had made some progress. (Tr. at 1208). The chiropractor assessed intermittent improvement but also noted inconsistent objective findings from visit to visit. (Tr. at 1209). The record continued to identify severe pain intensity greater than six out of ten and prolonged symptoms as complicating factors. *(Id.)*.

On September 17, 2024, Claimant demonstrated a steady gait and no gross neurological deficits. (Tr. at 1219). Yet, on November 12, 2024, Claimant reported to neurology that she believed her CRPS had progressed into her right upper extremity. (Tr. at 1458). She described burning, hypersensitivity, redness, swelling, and constant pain rated six to seven out of ten. *(Id.)*. Examination showed a right antalgic gait with cane use and diffusely pain-limited 4/5 strength in the right upper and lower extremities. (Tr. at 1462). There was no atrophy, spasticity, rigidity, or abnormal movement. (Tr. at 1462–63). The examination also documented diffuse hypersensitivity in the right upper and lower extremities. (Tr. at 1463).

On December 6, 2024, Claimant underwent a rheumatology evaluation for chronic pain and polyarthralgias. (Tr. at 1505–06). Examination revealed multiple tender trigger spots. (Tr. at 1506). There was no active synovitis, no tender or swollen joints, good range of motion in the wrists and elbows, and a negative metatarsal squeeze test. *(Id.)*. The

rheumatologist assessed that Claimant likely had fibromyalgia contributing to her pain and discussed management of the condition with her. *(Id.)*.

A December 9, 2024 cervical MRI showed multilevel degenerative disc disease. (Tr. at 1499–1500). At C5–C6, there was a broad-based disc protrusion with moderate cord compression and severe right foraminal narrowing, with left foraminal spurring likely impinging the left ventral nerve root. (Tr. at 1499). The radiologist's impression was moderate cord compression and severe bilateral foraminal narrowing at C5–C6 and moderate right foraminal narrowing at C4–C5. (Tr. at 1500).

At a January 8, 2025 neurosurgical evaluation, Claimant described constant neck pain radiating into both shoulders, arms, and hands, worse on the right, with intermittent numbness and tingling. (Tr. at 1537). She rated her pain at seven to eight out of ten and reported progression despite physical therapy, chiropractic treatment, and medication. *(Id.)*. Claimant denied falls or problems with balance or coordination. (Tr. at 1538). Examination showed normal gait and station, normal range of motion in the upper and lower extremities, no extremity tenderness or effusions, intact sensation, and 5/5 strength throughout. *(Id.)*. The provider's assessment nevertheless also noted subtle weakness of the right deltoid and right grip. (Tr. at 1539). Claimant was assessed with cervical stenosis and cervical radiculopathy. *(Id.)*.

### *B. Claimant's Statements*

In a January 2023 pain questionnaire, Claimant reported pain involving her right knee, foot, and hip, as well as her right arm, elbow, hand, shoulder, neck, and scapula. (Tr. at 338). She described the pain as burning, sharp, severe, shooting, and aching and stated that it was constant, although its severity varied. *(Id.)*. Claimant listed that walking, standing, sitting, activity, and stress increased her pain. *(Id.)*. She further reported

chronic fatigue and stated that pain caused mental fog and interfered with her ability to think and concentrate. (Tr. at 339).

In function reports, Claimant reported that she could walk for approximately five minutes, sit for twenty to thirty minutes, and stand for one to two minutes. (Tr. at 342, 361). She stated that she needed to lie down with her right leg elevated, experienced chronic fatigue, and sometimes slept for as long as sixteen hours. *(Id.)*. Claimant also described brain fog, confusion, and memory problems and stated that, during bad flares, wearing clothing or even having a thin sheet touch her right leg caused pain. *(Id.)*. She reported that pain interrupted her sleep and that her husband sometimes assisted her with dressing. (Tr. at 343, 362). Claimant stated that she used a shower seat, could not stand or sit long enough to prepare meals, and performed no household chores. (Tr. at 343–44, 362–63). She estimated that she could walk only ten to twenty steps before stopping to rest. (Tr. at 347, 366). Claimant also reported using a cane and walker and stated that stress worsened her CRPS and scrambled her thoughts. (Tr. at 348, 367).

During the administrative hearing, Claimant testified that she generally experienced daily pain at a level of five or six out of ten. (Tr. at 81). She testified that she could not perform household chores and that, although CRPS primarily affected her right side, she sometimes experienced swelling throughout her joints. (Tr. at 82). Claimant stated that she could stand approximately thirty seconds before needing to lean against something and approximately sixty seconds before needing to sit. (Tr. at 83). She testified that she changed positions while sitting approximately every sixty seconds to three minutes and could walk approximately fifteen steps before needing to sit. *(Id.)*. Claimant stated that sometimes even a gallon of milk was too heavy for her. (Tr. at 84). She had her groceries delivered and used a cane, walker, and shower chair. *(Id.)*. Claimant testified

that she could not bathe without the shower chair and used a walker when attempting to walk outside. (Tr. at 85). Claimant testified that fibromyalgia caused skin sensitivity. She also testified that she experienced cramps, tremors, and uncontrolled muscle movements. (Tr. at 86).

### *C. Prior Administrative Medical Findings and Opinion Evidence*

On July 18, 2023, State Agency medical consultant Rabah Boukhemis, M.D., assessed Claimant as capable of light work. (Tr. at 181, 184–85). Dr. Boukhemis found that Claimant could lift or carry twenty pounds occasionally and ten pounds frequently and could stand and/or walk for approximately six hours and sit for approximately six hours during an eight-hour workday. (Tr. at 184). He limited Claimant to occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, and kneeling; occasional crouching; and no crawling. (Tr. at 184–85). Dr. Boukhemis found no manipulative limitations and imposed environmental limitations. (Tr. at 185).

Dr. Boukhemis's narrative discussed Claimant's CRPS, the June 2023 consultative examination, her use of a cane, the examiner's opinion that the cane was likely unnecessary, normal sensory testing, and the absence of transfer problems. (Tr. at 181, 185). He concluded that the consultative examination did not demonstrate severe limitations and assessed a light RFC. (Tr. at 181).

On September 16, 2024, State Agency medical consultant Palle Reddy, M.D., likewise assessed that Claimant was capable of light work. (Tr. at 194–95). Dr. Reddy assessed substantially the same exertional and postural limitations as Dr. Boukhemis and found no manipulative limitations. *(Id.)*. His narrative discussed Claimant's CRPS, her use of an assistive device, the June 2023 consultative examination, the examiner's cane

opinion, and the March 2024 bone scan. (Tr. at 195). Dr. Reddy concluded that the initial physical assessment remained mostly consistent with the medical evidence. *(Id.)*.

Both State Agency assessments predated the November 2024 neurology examination, the December 2024 rheumatology evaluation and cervical MRI, and the January 2025 neurosurgical evaluation. (Tr. at 181, 195, 1458–63, 1499–1506, 1537–39). Separately, at the June 2023 consultative examination, Jewell opined that Claimant's cane was likely unnecessary. (Tr. at 945).

## VII. <u>Scope of Review</u>

The issue before the Court is whether the Commissioner's final decision is based upon an appropriate application of the law and is supported by substantial evidence. 42 U.S.C. § 405(g). The Court "must uphold the ALJ's decision if the ALJ applied correct legal standards and if the factual findings are supported by substantial evidence." *Calhoun v. Comm'r of Soc. Sec.*, No. 24-1315, slip op. at 8 (4th Cir. Sept. 3, 2026) (quoting *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 382–83 (4th Cir. 2021)).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). It is more than a mere scintilla but less than a preponderance, and the threshold for evidentiary sufficiency "is not high." *Calhoun*, No. 24-1315, slip op. at 8 (quoting *Biestek*, 587 U.S. at 103).

When examining the Commissioner's decision, the Court does not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Where conflicting evidence permits reasonable minds to differ, the choice belongs to the Commissioner. *Calhoun*, No. 24-1315, slip op. at 8.

Nevertheless, "deference is not abdication," and a reviewing court may not reflexively rubber-stamp an ALJ's findings. *Id.* The Court must be able to trace "'an accurate and logical bridge from the evidence' to the ALJ's conclusions based on a consideration of the whole record." *Id.* (quoting *Arakas*, 983 F.3d at 95). The ALJ may not cherry-pick evidence supporting nondisability while ignoring evidence pointing in the opposite direction and must provide a sufficient rationale for crediting and discrediting evidence. *Id.* at 8–9; *see Drumgold v. Comm'r of Soc. Sec. Admin.*, 144 F.4th 596, 605 (4th Cir. 2025).

Finally, an error warrants remand only if it is harmful. *Calhoun*, No. 24-1315, slip op. at 9. An error is harmless when the Court can confidently conclude that no reasonable ALJ, fully crediting the relevant evidence, could have reached a different result. *Id.* The party challenging the agency action bears the burden of demonstrating prejudicial error. *Id.*

## VIII. <u>Discussion</u>

Claimant argues that the ALJ failed to properly evaluate the limiting effects of her fibromyalgia under *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020). She contends that the ALJ improperly relied on objective medical findings to discount her reported symptoms and compounded that error by evaluating fibromyalgia together with her other physical impairments. (ECF Nos. 8 at 12–13, 10 at 5–7).

Under the applicable regulations and rulings, an ALJ employs a two-step process when evaluating a claimant's symptoms. 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304. First, the ALJ determines whether objective medical evidence establishes a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 416.929(b). If that showing is made, the ALJ

evaluates the intensity and persistence of the symptoms and determines the extent to which they limit the claimant's ability to perform work related activities. *Id.* § 416.929(c).

In *Arakas*, the Fourth Circuit held that a claimant may rely exclusively on subjective evidence to establish the severity, persistence, and limiting effects of fibromyalgia symptoms once the claimant establishes a medically determinable impairment that could reasonably cause those symptoms. *Arakas*, 983 F.3d at 95–96. The Fourth Circuit further held that an ALJ "may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors" to discount subjective complaints attributable to fibromyalgia. *Id.* at 97.

The Fourth Circuit reaffirmed that rule in *Hultz v. Bisignano*, 162 F.4th 111 (4th Cir. 2025). The Court explained that examinations of patients with fibromyalgia commonly reveal full range of motion, no joint swelling, and normal muscle strength and neurological findings. *Id.* at 121. The ALJ in *Hultz* relied on objective medical findings when discounting the claimant's testimony regarding the intensity, persistence, and limiting effects of her fibromyalgia symptoms. *Id.* at 122. The Fourth Circuit held that this reasoning contravened *Arakas*, and it rejected the Commissioner's argument that the ALJ had also relied on other evidence. *Id.* at 122–23. Although *Hultz* was issued after the ALJ's March 2025 decision in this case, it reaffirmed the rule established in *Arakas*, which governed the ALJ's evaluation of Claimant's symptoms.

Neither *Arakas* nor *Hultz* prohibits an ALJ from discussing objective medical findings contained in the record. *See Rosalyn R. P. v. Bisignano*, 2026 WL 1864019, at *9 (M.D.N.C. June 29, 2026). The relevant question is whether the ALJ used those findings to discount the severity, persistence, or limiting effects of symptoms attributable to fibromyalgia.

Here, the ALJ found fibromyalgia to be a severe impairment. (Tr. at 57). In assessing Claimant's RFC, he found that her medically determinable impairments could reasonably be expected to cause her alleged symptoms but concluded that her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 62). The ALJ then stated that he had considered the "objective medical evidence of record, both physical and mental," and evaluated Claimant's physical impairments collectively. *(Id.)*.

The ALJ's subsequent discussion demonstrates that his consideration of objective evidence was not merely descriptive. He acknowledged that the December 2024 rheumatology examination revealed tender trigger spots. (Tr. at 63). He then contrasted that evidence with the absence of active synovitis or tender swollen joints, good range of motion in the wrists and elbows, and a negative metatarsal squeeze test. *(Id.)*. The ALJ next stated that he found it "important to note" that a January 2025 examination showed normal gait and station, normal range of motion in the upper and lower extremities, no extremity tenderness or effusions, and 5/5 strength throughout. *(Id.)*. Full range of motion, absence of joint swelling, and normal strength are the types of findings that *Arakas* and *Hultz* explain commonly occur in fibromyalgia and do not reliably measure the severity of the condition. *Arakas*, 983 F.3d at 96–97; *Hultz*, 162 F.4th at 121.

The ALJ also expressly relied on normal objective findings when determining the extent of Claimant's physical limitations. He found that abnormal gait and strength findings and spinal imaging supported restricting Claimant to light work with additional limitations. (Tr. at 64). He contrasted those findings with normal gait and strength in February 2023, Claimant's April 2023 report of improvement, the June 2023 opinion that

her cane was likely unnecessary, the September 2024 steady gait and absence of gross deficits, and the January 2025 normal gait, range of motion, and strength. *(Id.)*. The ALJ expressly concluded that those findings were "inconsistent with greater limitations." *(Id.)*. Thus, this is not a case in which the ALJ merely summarized objective findings appearing in the medical record.

The manner in which the ALJ considered Claimant's physical impairments further complicates the analysis. He discussed degenerative disc disease, CRPS, and fibromyalgia together under the heading "Physical Impairments" and relied on the same collection of normal and abnormal findings in determining the physical RFC. (Tr. at 62–64). He did not identify which reported symptoms he attributed to fibromyalgia or otherwise distinguish his evaluation of fibromyalgia symptoms from symptoms associated with impairments that are more readily measured by objective testing. *(Id.)*. The Court therefore cannot determine that the normal objective findings were used only to evaluate Claimant's degenerative disc disease or other objectively measurable conditions.

This Court has addressed similar analyses. In *Priscilla S. v. Dudek*, the Court concluded that a subjective symptom analysis was not supported by substantial evidence where the ALJ failed to evaluate fibromyalgia separately from the claimant's other physical conditions and relied on objective evidence in assessing the claimant's symptoms. *Priscilla*, 2025 WL 1109438, at *11. Likewise, in *Amy A. v. Bisignano*, the Court found that the ALJ's combined evaluation of fibromyalgia with another physical impairment did not permit the required evaluation of the claimant's fibromyalgia symptoms. *Amy*, 2025 WL 2847226, at *9–10. Those decisions are consistent with *Arakas* and the Fourth Circuit's subsequent reaffirmation of its rule in *Hultz*.

The Commissioner argues that the ALJ did not rely solely on objective evidence. (ECF No. 9 at 9–10). That distinction does not resolve the issue. *Hultz* expressly rejected the argument that consideration of other evidence cures reliance on objective findings to discount fibromyalgia symptoms. 162 F.4th at 122–23. Under *Arakas* and *Hultz*, objective findings may not be used even as one of several reasons for discounting symptoms attributable to fibromyalgia. *Id.*; *Arakas*, 983 F.3d at 97.

The Commissioner's remaining authorities do not compel a different result. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996), states general principles governing the evaluation of disabling pain, but *Arakas* subsequently established the specific rule applicable to fibromyalgia, and *Hultz* reaffirmed it. *See Hultz*, 162 F.4th at 121–23. The propositions drawn from *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986), and *Stup v. UNUM Life Insurance Co.*, 390 F.3d 301, 303 (4th Cir. 2004), that a diagnosis alone does not establish disability and that not every person with fibromyalgia is disabled, are not in dispute. *Rodney M. v. Kijakazi*, 2024 WL 1097192, at *8 (D. Md. Mar. 13, 2024), concerned consideration of objective findings in evaluating a low back impairment rather than the severity of fibromyalgia symptoms. Finally, *Padua v. Bisignano*, 145 F.4th 784, 789–90 (7th Cir. 2025), does not displace controlling Fourth Circuit precedent. The issue is not whether Claimant's fibromyalgia diagnosis compelled a finding of disability, but whether the ALJ applied the proper legal standard when evaluating the limiting effects of symptoms attributable to that impairment.

The Commissioner also relies on Claimant's reports of improvement. The April 2023 record concerned chiropractic treatment for cervical and lumbar complaints. (Tr. at 717–18). The May 2024 record likewise concerned chiropractic treatment of spinal complaints. (Tr. at 1208–09). The January 2025 examination concerned cervical stenosis

and radiculopathy. (Tr. at 1537–39). None of those records reflects improvement specifically in Claimant's fibromyalgia symptoms, and the April 2023 and May 2024 records predate the December 2024 rheumatology evaluation addressing fibromyalgia. (Tr. at 1505–06). *Hultz* explains that intermittent treatment, occasional daily activities, and even improvement in other medical conditions may remain consistent with debilitating fibromyalgia symptoms. *Hultz*, 162 F.4th at 124.

The prior administrative medical findings likewise do not resolve the issue, as both were submitted before the December 2024 rheumatology evaluation addressing fibromyalgia and the subsequent medical evidence. (Tr. at 181, 195, 1505–06, 1537–39). Although the ALJ found their assessments mostly persuasive, those assessments do not provide an evaluation of Claimant's later documented fibromyalgia symptoms under the standard required by *Arakas*. (Tr. at 65–66).

The ALJ's error cannot be considered harmless. The record contains allegations of pain, fatigue, brain fog, skin sensitivity, difficulty remaining in one position for an extended period, and a need to lie down during the day. (Tr. at 81–86, 338–39, 342, 361). The ALJ did not separately evaluate which alleged limitations were attributable to fibromyalgia under a standard that did not rely on normal objective findings. The Court therefore cannot determine whether the same RFC, and consequently the same finding at step five, would have resulted had the proper legal standard been applied.

This case is distinguishable from *Calhoun v. Comm'r of Soc. Sec.*, No. 24-1315 (4th Cir. Sept. 3, 2026). There, the Fourth Circuit concluded that an alleged RFC error was harmless because the VE had separately testified that the same occupations remained available under the more restrictive limitation urged by the claimant. *Id.*, slip op. at 15–16. Thus, the court could determine from the existing administrative findings that the

alleged error could not have affected the result. *Id.* Here, there is no alternative RFC or VE finding establishing that the jobs identified by the ALJ would remain available after Claimant's fibromyalgia symptoms are evaluated under the correct legal standard. The Court therefore cannot confidently conclude that the error did not affect the disability determination. *See id.* at 9.

For these reasons, the undersigned **FINDS** that the ALJ did not apply the proper legal standard in evaluating Claimant's fibromyalgia symptoms and that the resulting RFC determination is not supported by substantial evidence. The matter should therefore be remanded for further consideration of Claimant's fibromyalgia symptoms under the proper legal standard.

Claimant also argues that the ALJ failed to properly evaluate the limiting effects of her CRPS under SSR 03-2p. (ECF Nos. 8 at 10–12, 10 at 1–4). SSR 03-2p recognizes that objective findings associated with CRPS may be transitory, that conflicting medical evidence is not unusual, and that the signs and symptoms of CRPS may remain stable, improve, or worsen over time. SSR 03-2p, 2003 WL 22399117, at *5–6 (Oct. 20, 2003). Once CRPS has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms in light of the entire record. *Id.* at *6.

An ALJ's failure expressly to cite SSR 03-2p does not itself require remand if the ALJ substantively applies the proper standard. *See Adam H. v. Bisignano*, 2026 WL 568774, at *4 (D. Md. Mar. 2, 2026). However, courts applying SSR 03-2p have explained that juxtaposing normal and abnormal findings may be insufficient when the ALJ does not explain how conflicting evidence affects the evaluation of the claimant's reported pain

and functional limitations. *Id.* at *4–5; Jacob B. v. Bisignano*, 2026 WL 972983, at *5–6 (D. Md. Apr. 10, 2026).

Here, the ALJ contrasted abnormal gait and strength findings with normal gait, strength, and range of motion findings at other points in the record. (Tr. at 62–64). The decision does not address SSR 03-2p's recognition that CRPS findings may fluctuate or explain how the normal findings affected Claimant's reported CRPS symptoms in light of that feature of the condition. *(Id.)*.

The Court need not determine whether the ALJ's CRPS analysis independently requires reversal because remand is already required based on the ALJ's evaluation of Claimant's fibromyalgia. On remand, however, the Commissioner should reconsider Claimant's CRPS argument and reevaluate the relevant evidence consistent with SSR 03-2p.

## IX. <u>Recommendations for Disposition</u>

For the reasons set forth above, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Claimant's request for remand (ECF No. 8); **DENY** the Commissioner's request to affirm the final decision (ECF No. 9); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Proposed Findings and Recommendation; and **DISMISS** this action from the docket of the Court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of

Civil Procedure 72(b)(2), the parties shall have fourteen days after service of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. An extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file timely written objections shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the United States Court of Appeals for the Fourth Circuit. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

**ENTERED:** September 21, 2026

Omar J. Aboulhosn
United States Magistrate Judge